**In re PITTSBURGH TERMINAL WAREHOUSE & TRANSFER CO.**

No. 21464.

District Court, W. D. Pennsylvania.

As Amended Dec. 23, 1946.

See also 59 F.Supp. 111.

Robert C. Sproul, Jr., of Pittsburgh, Pa., disinterested trustee.

Lee W. Eckels, Lewis M. Alpern, and Emanuel Amdur, all of Pittsburgh, Pa., for disinterested trustee.

Patterson, Crawford, Arensberg & Dunn and Ella Graubart, all of Pittsburgh, Pa., for indenture trustee.

Frederick T. Finnigan, of New York City, for Securities and Exchange Commission.

GIBSON, District Judge.

### Findings of Fact.

1. The court, as part of its findings of fact, approved the stipulation of facts filed as of November 8, 1946, by the Disinterest-.d Trustee and the Indenture Trustee.

It further finds as follows:

2. During the period from 1906 to September 1929, James I. Buchanan, President of the debtor company, was also an officer or director of the Pittsburgh Trust Company, and, upon the merger of the Pittsburgh Trust Company and the Peoples Saving and Trust Company into the Peoples-Pittsburgh Trust Company, became a director thereof and continued in such office until his death in January, 1931.

3. During the period from 1906 to 1927 Mr. Buchanan, while standing in a fiduciary relationship to the debtor company's bondholders, caused misleading reports of the results of the operations of the debtor to be issued and published. Such reports concealed the fact that, although dividends in excess of $900,000 were paid to the debtor company's stockholders, there were no earnings available for payment of such dividends by reason of failure of the debtor to make charges for depreciation and obsolescence and for repairs against operating income.

4. In January, 1931, none of the officers of the Peoples–Pittsburgh Trust Company owned stock of the debtor company.

5. The payments of interest before 1938 out of the general funds of the company on the $200,000 mortgage were made without pressure from the mortgagee, and were made because the president of the debtor wished to preserve the equity in the First Ward property for the bondholders.

6. The minutes of the bondholders' committee show that the members gave constant and faithful consideration to the right of the bondholders and used their best judgment in protecting those rights.

7. The indenture trustee and its officers had no notice of the accounting methods of the debtor in 1931.

8. The reports of the independent accountants, which are attached to the minutes of the stockholders' meetings, merely comment on the failure to take depreciation and do not urge the company to take depreciation.

9. The stockholders knew that no depreciation was taken until 1931 and made no objection thereto.

### Conclusions of Law.

I. The indenture trustee was not guilty of any negligence or default in the performance of its duties under the indenture.

II. The statute of limitations is a complete bar to all of the claims asserted in the exceptions.

III. As James I. Buchanan was the only official connected with both the debtor and the indenture trustee and was one of the largest stockholders of the debtor, there is no presumption that he notified the indenture trustee of the payment of dividends.

IV. Under the Act of 1874 the directors of the debtor were not liable for the payment of dividends as there is no evidence that the debtor was insolvent at the time of payment of dividends or was rendered insolvent by the payment of dividends.

V. The indenture trustee was not guilty of a breach of trust in not filing suits against the directors of the debtor.

VI. It was proper for the debtor to make payments of interest on the mortgage on the First Ward lot prior to 1938 in order to preserve what it believed to be a substantial equity in the property for the bondholders.

VII. It was proper for the debtor to make the payments after 1938 out of income of the mortgaged property to the mortgagee.

VIII. The fact that two of the members of the bondholders' committee were officers of the indenture trustee does not of itself make the indenture trustee liable for payments which the debtor made.

IX. It was proper for the debtor to pay the expenses of the condemnation proceed-

ings out of its general funds as the mortgagee had a lien on the award under the law of Pennsylvania.

X. The exceptions should be dismissed and judgment entered in favor of Peoples-Pittsburgh Trust Company, now the Peoples First National Bank and Trust Company.

### Discussion.

On September 20, 1946, pursuant to an order of court, Peoples-Pittsburgh Trust Company (now Peoples First National Bank and Trust Company) successor Indenture Trustee of Pittsburgh Trust Company, filed its account. By it was disclosed the fact that the accountant had received and distributed bonds in amount of $2,000,000 issued by the debtor under its indenture of mortgage of November 1, 1906. Other than the receipt and distribution of the bonds no fund of the debtor is mentioned, and in fact no such fund was ever received or handled by the Indenture Trustee, as is admitted by all concerned herein.

After the account was filed the Disinterested Trustee of the debtor filed exceptions to the same. None of them relates to any item mentioned in the account, but all are based upon negligence charged against the accountant in the performance of its duties as Indenture Trustee. The exceptions are based upon Paragraph 57 of the Trust Indenture which provides:

"That the said Trustee shall not be responsible or answerable under this indenture, save only for its own willful negligence or default."

The Indenture Trustee never having in its possession any of the funds of the debtor, and the charge against it being its willful negligence upon which recovery is sought, the procedure against it must be by plenary action.

In discussing the subject matter of the exceptions, which came up in the argument before the Special Master, the Master held:

"2. The reorganization trustees' petition filed December 10, 1945, the answer thereto of Peoples-Pittsburgh Trust Company filed January 21, 1946 and the reorganization trustees' motion for judgment on the pleadings filed April 18, 1946 are the equivalent of a plenary action and this court has jurisdiction to order such accounting in this reorganization proceeding upon said pleadings without a separate civil action."

While some doubt exists as to whether the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, allow as an equivalent to a plenary action a petition such as was filed, and a time for answer less than set forth in the Rules, we do not now attempt to resolve the doubt in view of our ultimate decision.

By the first exception to the account the Disinterested Trustee seeks to hold the Indenture Trustee liable for $100,963.79, interest paid by the debtor on the $200,000 Mortgage on the First Ward lot of the debtor, not included in the indenture mortgage, from November 1, 1931 to March 24, 1941. The first Ward property was an improved lot which was rented for an amount insufficient to meet but part of the taxes upon it and the interest upon the mortgage. The mortgagee of the $200,000 mortgage, in name, was the Peoples-Pittsburgh Trust Company. The funds advanced to the debtor came from estates for which that Trust Company was trustee. With the exception of the sum of $29,000, used to pay off a prior mortgage, all the proceeds of the mortgage were used for the improvement and rehabilitation of the 17th Ward property of the debtor.

The debtor defaulted in payment of interest on the bond issue after May, 1931. It paid interest on the $200,000 mortgage until 1938, and thereafter in part until 1943, when the reorganization proceeding was begun.

In 1931 the bondholders protective committee was organized. Of its five members two were officers of the Peoples-Pittsburgh Trust Company. A third member, Mr. Abernethy, is alleged by exceptants to have been under the control of the Indenture Trustee. While he was undoubtedly friendly to the Trustee, he was an independent business man of standing, and his conduct was such as to indicate that his business judgment was not controlled by it.

The basis upon which judgment is sought against the Indenture Trustee is found in

the allegation that it was serving as the trustee of two cestuis que trustent whose interests might, and indeed did to a certain extent, come into conflict, and that the present defendant favored the trust with which its interest was the more closely connected to the injury of the debtor and its bondholders. The connection of the Indenture Trustee with these trusts is not to be denied, nor is the fact that considerable embarrassment and diversity of interests did result. Such a combination of possibly conflicting trusteeships is far from meeting with the approval of the court, and requires a very close examination of the procedure thereunder for the purpose of determining whether the rights of each trust have been reasonably preserved.

▮ Undesirable as is such a combination of possibly conflicting trust interests, it does not follow that lack of good faith or negligence in the performance of its duty is to be attributed to the Indenture Trustee which will require a judgment against it as demanded in the first exception. Evidence is required to establish bad faith or negligence.

With knowledge of what has occurred since the year 1938, it is plain that payment of interest by the debtor on the $200,000 mortgage on the First Ward lot was not to the advantage of the bondholders whose security was the Mortgage on the Terminal Warehouse property. The exact financial condition of the Terminal Warehouse before 1938, however, was not known to the Indenture Trustee, or even to the debtor, when the interest was paid. Prior to that year a different picture was presented. Until shortly before his death in 1931 the connection of the Indenture Trustee with the debtor had been committed to the care of James I. Buchanan, one of its directors. Unfortunately his interests in the debtor were not identical with those of the Trustee. He was the organizer of the Terminal Warehouse Company and one of its largest stockholders. After his death it became evident that his method of supervising the accounting of the Terminal Warehouse was such as to distort its actual standing. By failing to provide for a sinking fund and to note depreciation or to charge repairs to operating expenses he was enabled to have dividends declared, and the company to pay the interest on its bond issue. Up to 1931 no stockholder or bondholder of the Terminal Warehouse had made any protest to the Indenture Trustee against Mr. Buchanan's accounting methods or operations, although they were well and easily known.

When Mr. Abernethy became president of the debtor company in 1931, its accounting method was corrected, the correction carrying with it a necessary change in the financial condition of the Terminal Warehouse which caused a fear, which had existed even before Mr. Buchanan's death, that it might not be able to meet its bonded indebtedness and taxation when they would become due. At this time the Bondholders Protective Committee was organized, with two of its five members officers of the Peoples-Pittsburgh Trust Company.

From 1931 to 1938, the debtor, with the consent of the Bondholders Protective Committee, paid interest on the mortgage on the First Ward lot but did not pay the interest on the bonds of the mortgage on the 17th Ward lot. In so doing the debtor, the Bondholders Protective Committee and the officers of the Indenture Trustee were acting upon the theory that they were preserving a valuable asset of the Terminal Warehouse, and were not intentionally preferring one trust estate of the Peoples-Pittsburgh Trust Company over another. They were treating the embarrassing dual trust situation just as it would have been handled had the First Ward mortgage been under the control of a trustee other than the Peoples-Pittsburgh Trust Company, and foreclosure of the mortgage would have followed a failure to meet the interest which had fallen due. Foreclosure, the Bondholders Protective Committee and the Trust Company conceived, would deprive the Terminal Warehouse of a valuable asset which it had in the First Ward lot. The preservation of the supposed asset by the interest payment was justified by the fact that the Terminal Warehouse had received and used the proceeds of the mortgage on the First Ward property.

Prior to 1938 the debtor and the Bondholders Protective Committee had good reason to believe that the debtor had a very considerable equity in the First Ward lot.

The debtor had demanded $1,000,000 for the property, and it was assessed by the City of Pittsburgh at the sum of $553,400 and by Allegheny County at $362,430. Prior to 1938 the City of Pittsburgh had condemned a part of the lot. At the first trial the jury awarded $151,000 for the part taken, but on a second trial only $50,277 was allowed. The judgment became final in 1938, and ended the payment of interest by the debtor on the First Ward mortgage and in the ultimate reorganization proceeding. It meant that the debtor and the Bondholders Protective Committee, and the Peoples-Pittsburgh Trust Company as well, were woefully disappointed in the verdict and that their supposed equity was non-existent, but did not prove that the Peoples-Pittsburgh Trust Company, or its officers on the Bondholders Protective Committee, had been guilty of bad faith or willful negligence in failing to take action to stop the payment of interest on the First Ward mortgage after the death of Mr. James I. Buchanan in 1931. The exception incorporated a finding that the Indenture Trustee was in full charge of the debtor during this interest-paying period, which is not in accordance with the fact.

The second exception asserts that the Indenture Trustee should be surcharged with $20,334 attorneys' fees and other litigation expenses connected with the condemnation of part of the First Ward lot which, it is alleged, it (Indenture Trustee) caused to be paid out of the general funds of the Terminal Warehouse. The amount of $12,807.78 for counsel fees and expenses was paid to attorneys who represented debtor in the condemnation action. Part of this sum was for services in the condemnation action and was paid prior to payment of the judgment by the City of Pittsburgh. The attorneys had claimed no lien upon the award. The payment was upon the theory that Terminal Warehouse, which received the proceeds of the First Ward mortgage, was equitably required to attempt to preserve its supposed equity in the property. It was not mentioned, however, in the second exception.

The City, in making payment of the award against it, deducted $29,431.71 for delinquent taxes on the property. The balance, $20,845.53, was assigned by the debtor to the Peoples-Pittsburgh Trust Company, mortgagee of the $200,000 mortgage, pursuant to its lien rights. This was done after due notice to bondholders and with consent of the Bondholders Protective Committee.

The third exception asserts that the Indenture Trustee should be surcharged with the sum of $925,598.58, aggregate amount of annual dividends paid by debtor between 1911 and 1927 inclusive when the net earnings of the debtor were insufficient to justify such dividends. This exception claims that the dividends were paid with the knowledge, consent and approval of the Indenture Trustee.

This exception is lacking in proof. The knowledge and consent of the Trustee is based on the assumption that it had knowledge of the dividends by reason of the connection of Mr. James I. Buchanan with the Trustee as one of its directors. Other than the assumption there is no proof whatsoever of the knowledge of the Trustee. Mr. Buchanan's actions in this period were plainly against the interests of the Trustee, and concealed by improper accounting. No other officer of the Trustee was an officer of the Terminal Warehouse, and no complaint was made to the Trustee by any person having knowledge of the methods by which the dividends were declared. In view of the undoubted conflict between the interests of Mr. Buchanan and those of the Indenture Trustee, the assumption of knowledge without proof is unjustified.

No testimony in the record tends to establish insolvency, or threatened insolvency, by reason of the dividends, of the Terminal Warehouse when they were declared. Such proof is necessary to sustain the exception, even if knowledge were assumed of the improper accounting merely by reason of the office of Mr. Buchanan as a director of the Indenture Trustee.

The Fourth and Fifth exceptions are general and assert that the Indenture Trustee should be surcharged in an amount not named for failure to safeguard the interests of the bondholders of Terminal Warehouse.

The court recognizes the duty of an Indenture Trustee to perform its duties

with undivided loyalty to the trust it has assumed. In the instant case it has reason to regret that because of the mortgage on the First Ward lot a situation was created which might have ended in conflicts between the trusts which would have made loyalty to each impossible, and which led to the exceptions filed. The court, after attempting to scrutinize the actions of the Indenture Trustee, and of the same Trust Company as trustee of the mortgage pool, feels that in each capacity the Trust Company performed its duty, giving to each trust just that to which it was legally entitled, and did not willfully neglect the rights of the Terminal Warehouse trust to the benefit of the mortgage pool.

As stated supra, the remedy sought by the exceptions must be by plenary action, and the exceptions are subject to all pleas which can be urged in such actions. In the present matter the exceptions are based upon the Indenture Agreement.

The exceptions will be dismissed.